UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| GOKSEL SECILMIS, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 5:23-cv-01538 |
| HELP FINANCE GROUP, LLC and COMPLETE LEGAL PLAN, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

NOW comes GOKSEL SECILIMIS ("Plaintiff") by and through the undersigned, complaining as to the conduct of HELP FINANCE GROUP, LLC ("HFG") and COMPLETE LEGAL PLAN, LLC ("CLP") (collectively "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.*, the Texas Credit Services Organizations Act ("TCSOA") under Tex. Fin. Code § 393.101 *et seq.*, and the Texas Consumer Debt Management Services Act ("TCDMSA") under Tex. Fin. Code § 394.201 *et seq.*, for Defendants' unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Western District of Texas and a substantial portion of the events or omissions giving rise to the instant claims occurred within the Western District of Texas.

4. Joinder of Plaintiff's claims against Defendants is proper under Fed. R. Civ. P. 20 as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and common questions of law or fact will arise.

## PARTIES

5. Plaintiff is a consumer over 18 years of age residing in San Antonio, Texas, which lies within the Western District of Texas.

6. HFG is a credit repair organization and debt settlement provider claiming to help consumers achieve financial stability through their offerings designed to assist consumers with becoming debt free and enjoying improved credit. HFG is a limited liability company organized under the laws of the state of Florida with its principal place of business located at 6300 NW 5th Way, Suite 100, Fort Lauderdale, FL 33309.

7. CLP offers programs designed to provide consumers access to discounted legal services. Upon information and belief, CLP routinely has its services crammed into contracts provided by various entities, including purported credit repair organizations and debt settlement providers. CLP is a limited liability company organized under the laws of the state of Florida with its principal place of business located at 300 East Oakland Park Boulevard, Unit 412, Wilton Manners, FL 33334.

8. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**FACTS SUPPORTING CAUSES OF ACTION**

9. In approximately February of 2023, Plaintiff had a number of debts which were impacting his credit, prompting him to begin looking for companies who may be able to assist in improving his credit and resolving his obligations.

10. Plaintiff happened upon HFG.

11. Plaintiff spoke with HFG who advised that it would be able to resolve his obligations for less than the balance owed, and that in order to do so Plaintiff would need to make certain monthly payments over a certain period of time, which would go towards HFG resolving his obligations.

12. HFG further represented that, upon completing its program, Plaintiff's financial and credit position would be substantially improved as it would allow otherwise unresolved obligations to be resolved, in turn reducing Plaintiff's overall debt load, and thus improving his credit history and debt to income ratio.

13. Furthermore, part of HFG's services included credit improvement provided by "Credit Analyzer," in turn representing that HFG's services included provided assistance to boosting Plaintiff's credit score, in addition to the benefit its debt settlement services would have.

14. Even further, it was represented to Plaintiff that HFG would reach out to his enrolled creditors immediately and that the creditors would cease contacting Plaintiff and instead contact HFG.

15. Finding desirable the nature of HFG's services, Plaintiff subsequently entered into a contract with HFG for its provision of services.

16. Within HFG's contract, and without adequate disclosure by HFG, several additional services were crammed – including CLP's program.

17. HFG's contract provided that Plaintiff was to make monthly payments to it of approximately $260, and that these payments would last 26 months, and that through these payments, Plaintiff's enrolled obligations would be completely resolved.

18. Plaintiff enrolled two debts, which totaled approximately $5,221.54 at the time of enrollment.

19. The enrolled debts were primarily payday loans associated with low balances.

20. Upon information and belief, the enrolled creditors are notoriously difficult to work with and unwilling to work with debt settlement and credit repair companies like HFG.

21. Upon further information and belief, HFG was aware of this fact yet nevertheless suggested the debts would be resolved.

22. It would have been Plaintiff's best course of action to attempt to resolve these debts on his own, rather than making payments to a company who would not be able to deliver the represented results.

23. Further, HFG's contract required Plaintiff to pay *more* than the balance of the enrolled debts at the time they were enrolled, notwithstanding Defendant's contrary representations that its services would save Plaintiff money by resolving his enrolled obligations.

24. Additionally, HFG's misleading and deceptive billing practices resulted in it receiving compensation in other ways prior to, and without needing to, complete any of the services it agreed to perform for Plaintiff.

25. Included with HFG's services were services offered by CLP.

26. In order to use CLP's services, Plaintiff had to make an upfront payment of $600, followed by $60 monthly payments thereafter – and Plaintiff made such upfront payment.

27. However, CLP's services were completely unnecessary for Plaintiff, and rather than being designed to provide any meaningful benefit to Plaintiff, were instead designed to charge Plaintiff up-front fees prior to any services or results being delivered to Plaintiff.

28. Upon information and belief, HFG is compensated for the referral of clients to CLP, such that HFG benefits when its clients have enrolled in, and made payment to, CLP for services that are ultimately unnecessary, upsold to consumers, and which result in removing the incentive for HFG to actually provide the services and deliver the results it was contracted to perform.

29. As such, HFG and CLP are engaged in a deceptive and fraudulent course of business premised upon misrepresenting their services to consumers, providing consumers useless services, all the while collecting upfront payments from consumers without every providing any services or delivering any results to consumers.

30. Upon further information and belief, HFG and CLP engage in this scheme so as to avoid the parameters of the Telemarketing Sales Rule ("TSR") which prohibits entities like HFG from collecting payments from consumers on an upfront basis, *inter alia.*

31. Frustrated by Defendant's misleading and deceptive representations and overarching failure to deliver any meaningful results for Plaintiff, Plaintiff cancelled his agreements with Defendants.

32. Despite Plaintiff's cancellation of his agreements with Defendants, Defendants have failed to refund Plaintiff for payments made in connection with services Defendants completely failed to perform for Plaintiff.

33. Frustrated, distressed, and concerned over Defendants' conduct, Plaintiff spoke with the undersigned regarding his rights.

34. Plaintiff has suffered concrete harm as a result of Defendants' actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendants for deficient, useless, and misrepresented services, payments made to Defendants in violation of state and federal law, as well as numerous violations of his state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations and debt management companies.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT
#### PLAINTIFF AGAINST DEFENDANTS

35. Plaintiffs repeat and reallege paragraphs 1 through 34 as though fully set forth herein.

36. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

37. HFG is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit."

38. HFG's debt settlement services were offered for the explicit and implicit purpose of improving Plaintiff's credit history, as resolving obligations would lower the overall debt load impacting Plaintiff's credit, which would in turn improve his credit once those obligations were resolved. Furthermore, HFG's services included providing assistance to Plaintiff in improving his credit through the offerings explicitly designed to improve Plaintiff's credit. Even further, HFG represented that its services can favorably impact Plaintiff's credit.

39. FLP is further a "person" as contemplated by the CROA.

    a. **Violations of CROA § 1679b(a)**

40. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits **any person** from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), **any person** is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

41. Defendants violated the above provisions of the CROA through their concerted fraudulent and deceptive scheme directed towards Plaintiff. Defendants are engaged in a scheme whereby HFG gets consumers on the hook through misrepresented services, subsequently gets misled consumers to agree to use CLP's services by cramming those services into its agreements and failing to adequately and properly disclose their nature, and using CLP's services as an indirect means to receive upfront and continued payments from consumers without actually having to provide the debt settlement services it was contracted to perform. Upon information and belief, Defendants' concerted conduct is designed to evade the requirements of the TSR while simultaneously committing an active fraud and deception on consumers.

42. Defendants further violated the above provisions of the CROA through their deceptive and misleading course of business whereby CLP's services are upsold to consumers despite being completely unnecessary. CLP's purported services are designed to provide discounted legal services to consumers; however, the true nature is not adequately explained and, more problematic, were completely useless to Plaintiff at the time the services were provided and Plaintiff paid significant sums for these services. Defendants are engaged in a pattern and practice of cramming useless services into consumer contracts in furtherance of their own bottom line.

43. Defendants further violated the above provisions of the CROA through the deceptive nature of their sharing of the fees purportedly going to CLP. HFG deceptively suggests that it gets paid when it settled debts; however, upon information and belief, HFG was further compensated through the exorbitant upfront payments Plaintiff made to CLP, which were, upon information belief, diverted to HFG.

44. HFG further violated the above provisions of the CROA through its deceptive representations regarding the nature of its debt settlement services. HFG suggested that it would be able to resolve Plaintiff's obligations for less than the balance owed and that Plaintiff was a good candidate for services; however, upon information and belief, the low balances or the debt, in conjunction with the nature of the creditors, made Plaintiff a bad candidate and resulted in the proportional cost of HFG services being out of line with what was justified.

45. Further, HFG violated the above provisions of the CROA through its deceptive representations that consumers can save money through the services. HFG deceptively suggested that Plaintiff could save money on the balances, when in fact the services would cost Plaintiff more than the balances of the enrolled debts.

    b. **Violation of CROA § 1679b(b)**

46. The CROA, pursuant to 15 U.S.C. § 1679b(b), states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

47. HFG violated § 1679b(b) as it charged and received money from Plaintiff in exchange for the performance of its services before such services were fully performed. Through HFG's billing

practices and fraudulent conduct, it received money from Plaintiff prior to performing any of the services it agreed to perform for Plaintiff.

### c. Violation of CROA § 1679c

48. The CROA, pursuant to 15 U.S.C. § 1679c, provides that certain disclosures and information must be provided to consumers prior to contracting with consumers.

49. HFG violated the above provision of the CROA through its failure to provide the requisite disclosures prior to contracting with Plaintiff.

### d. Violation of CROA § 1679d

50. The CROA, pursuant to 15 U.S.C. § 1679d, outlines various requirements for any contracts between CROs and their customers, including "the terms and conditions of payments, including the total amount of all payments to be made by the consumer to the credit repair organization or to any other person."

51. HFG violated the above provision of the CROA through the deceptive and misleading nature of the way it was compensated for its services and failure to accurately disclose the nature of thereof.

### e. Violation of CROA § 1679f(b)

52. The CROA, pursuant to 15 U.S.C. § 1679f(b), provides that "[a]ny attempt by **any person** to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

53. Defendants violated the above provision of the CROA through their attempts to get Plaintiff to waive the protections provided by the CROA. HFG is a credit repair organization subject to the CROA, and CLP is "any person" similarly subject to certain aspects, including the damages available, due to its relationship with HFG. HFG's contract seeks to improperly obtain

Plaintiff's waiver of the protections provided by the CROA, including efforts to generally disclaim the applicability of CROA despite its contrary representations bringing it within the CROA's ambit, and further through the inclusion of a merger and integration clause seeking to insulate HFG from liability in connection with the way it represents its services. CLP's contract further seeks to obtain Plaintiff's waiver of the protections provided by the CROA, including the availability of punitive damages against "any person," through its efforts to limit its liability in connection with the services provided in conjunction with HFG.

WHEREFORE, Plaintiff, GOKSEL SECILMIS, respectfully requests that the Arbitrator enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Arbitrator deems just and appropriate.

### COUNT II – VIOLATIONS OF THE TEXAS CREDIT SERVICES ORGANIZATION ACT
### PLAINTIFF AGAINST HFG

54. Plaintiff restates and realleges paragraphs 1 through 53 as though fully set forth herein.

55. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 393.001(1).

56. HFG is a "credit services organization" as defined by Tex. Fin. Code § 393.001(3).

   a. **Violations of Tex. Fin. Code §§ 393.201**

57. The TCSOA, pursuant to Tex. Fin. Code § 393.201, outlines certain requirements of the contracts entered into between consumers and credit services organizations.

10

58. HFG violated the above provision of the TCSOA in much the same way it violated § 1679d of the CROA.

### b. Violations of Tex. Fin. Code § 393.302

59. The TCOSA, pursuant to Tex. Fin. Code § 393.302, prohibits credit service organizations from receiving money for their services before such services are fully performed.

60. HFG violated § 393.302 in much the same way it violated § 1679b(b) of the CROA.

### c. Violations of Tex. Fin. Code §§ 393.304(1) & 393.305

61. The TCSOA, pursuant to Tex. Fin. Code § 393.304(1), prohibits a credit services organization from "mak[ing] or us[ing] a false or misleading representation in the offer or sale of the services of the organization." Similarly, pursuant to Tex. Fin. Code § 393.305, "[a] credit services organization or a representative of the organization may not directly or indirectly engage in a fraudulent or deceptive act, practice, or course of business relating to the offer or sale of the services of the organization."

62. HFG violated §§ 393.304(1) & 393.305 in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

### d. Violations of Tex. Fin. Code § 393.307

63. The TCSOA, pursuant to Tex. Fin. Code § 393.307, provides that "[a] credit services organization may not attempt to cause a consumer to waive a right under this chapter."

64. HFG violated § 393.307 through their attempts to obtain a waiver of Plaintiff's rights afforded under the TCSOA, in much the same way it violated § 1679f(b) of the CROA.

WHEREFORE, Plaintiff, GOKSEL SECILMIS, respectfully requests that the Arbitrator enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

    b.  Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 393.503(a)(1);

    c.  Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 393.503(b);

    d.  Enjoin HFG from further violations of law pursuant to Tex. Fin. Code § 393.502,

    e.  Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code §§ 393.503(a)(2)-(3); and,

    f.  Awarding any other relief the Arbitrator deems just and appropriate.

### COUNT III – VIOLATIONS OF THE TEXAS CONSUMER DEBT MANAGEMENT SERVICES ACT
### PLAINTIFF AGAINST HFG

65. Plaintiff restates and realleges paragraphs 1 through 64 as though fully set forth herein.

66. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 394.202(4).

67. HFG is a "provider" of "debt management service" as defined by Tex. Fin. Code §§ 394.202(6) & (10).

    **a.  Violations of Tex. Fin. Code § 394.207**

68. The TCDMSA, pursuant to Tex. Fin. Code § 394.207, provides that "[a] provider may not engage in false or deceptive advertising,"

69. HFG violated § 394.207 through its deceptive advertising directed towards Plaintiff regarding the nature of the services it would perform for Plaintiff, as discussed above.

    **b.  Violations of Tex. Fin. Code § 394.208**

70. The TCDMSA, pursuant to Tex. Fin. Code § 394.208(a), outlines a number of prerequisites that must be met prior to enrolling a consumer in a debt management plan.

71. HFG violated the above provisions of the TCDMSA by failing to follow perform all of the prerequisites prior to enrolling Plaintiff in its plan. HFG did not: provide Plaintiff individual counseling and educational information; did not prepare an individualized financial analysis prior

to enrolling Plaintiff; and did not provide a document providing certain disclosures prior to enrolling Plaintiff.

### c. Violations of Tex. Fin. Code § 394.209

72. The TCDMSA, pursuant to Tex. Fin. Code § 394.209, outlines the various requirements of the contracts entered into between debt management providers and consumers, including an individual itemization of all fees to be paid and outlining the existence of a surety bond or insurance, *inter alia.*

73. HFG violated the above provision of the TCDMSA through its failure to contain the full extent of information required to be included in its contract with Plaintiff.

### d. Violations of Tex. Fin. Code § 394.210

74. The TCDMSA, pursuant to Tex. Fin. Code § 394.210(c), provides that "[a] provider may not impose fees or other charges upon a consumer or receive payment for debt management services until the consumer has entered into a debt management service agreement with the provider that complies with Section 394.209."

75. HFG violated § 394.210(c) through its receipt of payments from Plaintiff for its debt management services without entering into a contract which complies with Texas law.

### e. Violations of Tex. Fin. Code § 394.212

76. The TCDMSA, pursuant to Tex. Fin. Code § 394.212, outlines a number of prohibited practices on the part of providers.

77. Pursuant to § 394.212(a)(9), a provider may not "engage in an unfair, deceptive, or unconscionable act or practice in connection with a service provided to a consumer."

78. HFG violated § 394.212(a)(9) through the deceptive and unfair nature of the representations made to Plaintiff and manner in which its services were subsequently provided, as outlined above.

### f. Violations of Tex. Fin. Code § 394.213

79. Pursuant to § 394.213, "a provider has a duty to a consumer who receives debt management services from the provider to ensure that client money held by the provider is managed properly at all times."

80. HFG violated § 394.213 through its failure to ensure that Plaintiff's money was managed properly.

WHEREFORE, Plaintiff, GOKSEL SECILMIS, respectfully requests that the Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 394.215(c);

c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 394.215(c);

d. Enjoin HFG from further violations of law pursuant to Tex. Fin. Code § 394.215(d);

e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code § 394.215(c); and,

f. Awarding any other relief the Honorable Court deems just and appropriate.

Dated: December 19, 2023

Respectfully submitted,

s/ Nathan C. Volheim
Nathan C. Volheim, Esq. #6302103
Counsel for Plaintiff
Admitted in the Western District of Texas
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200

Lombard, Illinois 60148<br>
(630) 568-3056 (phone)<br>
(630) 575-8188 (fax)<br>
nvolheim@sulaimanlaw.com